# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RICHARD J. SULLA,**

    **Petitioner,**

    **v.**                                  **Case No. 17-CV-987**

**RANDALL R. HEPP,**

    **Respondent.**

---

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

---

Richard J. Sulla, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sulla alleges that his conviction for armed burglary and burglary is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Sulla was charged in Jefferson County Circuit Court with one count of armed burglary, one count of conspiracy to commit arson, one count of burglary, and one count of operating a motor vehicle without the owner's consent, as a party to a crime, stemming from two burglaries and an arson. (*State v. Sulla*, 2013AP2316 (Wis. S. Ct. June 14, 2016), Answer, Docket # 10-3 at 441.) Sulla entered into a plea agreement with the State in which he agreed to plead no contest to the armed burglary and burglary charges, while the conspiracy to commit arson and operating a motor vehicle without the owner's consent charges would be dismissed and read into the record for purposes of sentencing and restitution. (*Id.*)

Prior to entering his plea, Sulla read and signed a Plea Questionnaire/Waiver of Rights form, and the circuit court held a plea hearing. (*Id.*) At the plea hearing, the circuit court concluded that Sulla's pleas were knowing, voluntary, and intelligent, and ordered judgment to be entered accordingly. (*Id.* at 442.) Sulla was sentenced to twenty years of imprisonment, consisting of seven and a half years of initial confinement and seven and a half years of extended supervision for the armed burglary count and two and a half years of initial confinement and two and a half years of extended supervision for the burglary count, with the sentences running consecutively. (Judgment of Conviction, Answer, Docket # 10-2 at 33.)

Sulla filed a motion for postconviction relief, seeking to withdraw his no contest pleas on the basis that his pleas were not made in a knowing, intelligent, and voluntary fashion. (Docket # 10-3 at 442.) Sulla argued that his pleas were unknowing because he "did not understand that for purposes of the read-in charge, he would effectively be considered to have committed the offense." (*Id.*) In support of his motion, Sulla filed an affidavit, which stated, in pertinent part, "[M]y attorney [ ] told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has . . . ." (*Id.*)

The circuit court denied Sulla's motion without an evidentiary hearing. (*Id.*) The circuit court concluded that Sulla was not entitled to an evidentiary hearing on his motion because his affidavit failed to allege sufficient facts which, if true, would entitle him to relief. (*Id.* at 443.) The circuit court further found that Sulla was not entitled to an evidentiary hearing because the record conclusively demonstrated that Sulla was not entitled to relief.

(*Id.*) Sulla appealed, and the Wisconsin Court of Appeals reversed, finding that Sulla's motion did allege sufficient facts and further concluded that Sulla was entitled to an evidentiary hearing because the record did not conclusively demonstrate that Sulla understood the effect of the read-in charges at sentencing. (*Id.*) The State appealed and the Wisconsin Supreme Court accepted review. (*Id.*)

The Wisconsin Supreme Court addressed the question whether the postconviction court was required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. (*Id.*) The supreme court reversed the court of appeals, finding that the circuit court was not required to hold an evidentiary hearing before determining whether Sulla had knowingly, voluntarily, and intelligently entered his pleas. The supreme court further found that the circuit court properly exercised its discretion in denying the motion without a hearing. (*Id.* at 472.) The supreme court found that Sulla was not entitled to an evidentiary hearing on his motion to withdraw his plea because the record conclusively demonstrated that Sulla was correctly informed of and understood the effect of the read-in charges at sentencing. (*Id.*) Sulla timely filed a petition for writ of habeas corpus on July 14, 2017. (Docket # 1 at 13.)

## STANDARD OF REVIEW

Sulla's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Sulla argues three grounds for relief in his habeas petition: (1) that his no contest plea was not knowingly and voluntarily made; (2) that the trial court erred in its determinations regarding the trial judge's judicial bias; and (3) that his trial counsel rendered ineffective assistance by failing to inform him about the read-in charges, failing to object to the trial judge's bias, and by not relaying e-mails regarding possible plea deals. (Docket # 1 at 6–8.) I will address each argument in turn.

### 1.    *Procedural Default*

Sulla asserts that he should be allowed to withdraw his no contest pleas because they were not knowingly and voluntarily made. Specifically, Sulla argues that his pleas were not knowing or voluntary because he did not know that the circuit court would consider the arson offense as having been committed by him at sentencing. (Petitioner's Br. at 7, Docket # 15.) As an initial matter, the respondent argues that Sulla procedurally defaulted this claim because the Wisconsin Supreme Court's decision rested on an adequate and independent state ground, namely, Wisconsin's *Nelson/Bentley* standard which contains a two-part test to determine whether a defendant is entitled to an evidentiary hearing on his motion to withdraw his plea. *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). *Nelson/Bentley* instructs that if a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle

the defendant to relief, the trial court must hold an evidentiary hearing. (Docket # 10-3 at 443.) If, however, the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may, in the exercise of its discretion, deny the motion without a hearing. (*Id.* at 443–44.)

A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* (internal quotation and citation omitted). But this doctrine will not bar habeas review unless the state court actually relied on the procedural default as an independent basis for its decision. Thus, "if the decision of the last state court to which the petitioner presented his federal claims fairly appears to rest primarily on the resolution of those claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims." *Id.* A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine "curtails reconsideration of the federal issue on federal habeas." *Id.* (internal quotation and citation omitted).

The Wisconsin Supreme Court in *State v. Allen*, 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433 clarified the two-part *Bentley* test and in *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014), the Seventh Circuit found that the *Allen* rule was a well-rooted procedural

requirement in Wisconsin and was therefore adequate. Thus, the *Nelson/Bentley* test is adequate to support the judgment.

The more difficult question, however, is whether the supreme court's reliance on *Nelson/Bentley* was independent of the federal question. As one court in this district noted, decisions rejecting claims pursuant to *Nelson/Bentley* will not always rest on an independent state ground because often the state court will need to interpret and apply federal law in determining whether the defendant meets the two-pronged test. *Hamilton v. Thurmer*, No. 08-CV-1007, 2010 WL 890062, at *5 n.1 (E.D. Wis. Mar. 9, 2010). If the state court does so, then it is a decision on the merits of the federal claim and is not a procedural default. *Id.*

In this case, the Wisconsin Supreme Court did not deny Sulla's motion simply because it found, for example, that Sulla failed to allege more than mere conclusory allegations. *See id.* Nor did the supreme court dismiss the motion merely because Sulla failed to present it "in the right way." *See id.* (quoting *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002)). Rather, the supreme court also considered in detail the merits of Sulla's argument that his plea was involuntarily made. For these reasons, I do not find Sulla procedurally defaulted ground one of his petition and will address the claim on the merits.

2.      *Knowing and Voluntary Plea*

Again, Sulla asserts that he should be allowed to withdraw his no contest pleas because they were not knowingly and voluntarily made. A defendant's plea of guilty or no contest is valid if entered knowingly, voluntarily, and intelligently. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Voluntariness of the plea is determined by "considering all of the relevant circumstances surrounding" the plea. *Brady v. United States*, 397 U.S. 742, 749 (1970). A plea is voluntary if not induced by threats

or misrepresentations and if the defendant is made aware of the direct consequences of his plea. *Id.* at 755. The defendant "need not be made aware of every possible consequence." *St. Pierre v. Walls*, 297 F.3d 617, 634 (7th Cir. 2002). Rather, he must be aware of the "relevant circumstances and likely consequence" surrounding the plea. *Brady*, 397 U.S. at 748. The United States Supreme Court has held that a knowing and voluntary plea bars any later challenge to alleged constitutional violations that occurred prior to the plea. *Tollet v. Henderson*, 411 U.S. 258, 265–67 (1970). The rationale for the bar is that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.* at 267.

Sulla argues that he should be allowed to withdraw his no contest pleas because he did not understand that for purposes of sentencing, he was "effectively" considered to have committed the arson offense, despite the fact he consistently denied involvement in the arson. (Petitioner's Br. at 6–7.) The respondent argues Sulla is not entitled to habeas relief because the Supreme Court has not clearly established that a guilty or no-contest plea is unknowing and involuntary unless the trial court informs the defendant how a charge that is dismissed and read-in could affect his sentence. (Resp. Br. at 15, Docket # 18.)

While the Supreme Court has stated that a defendant must be fully aware of the direct consequences of the plea, the Supreme Court has not specifically defined "direct consequences." *Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005). The Seventh Circuit has opined that "direct consequences" must certainly include the maximum sentence the defendant may serve because of the plea. *Id.* However, Sulla points to no Supreme Court precedent establishing that a defendant must be made aware of how a read-in charge could

affect his sentence. Thus, Sulla cannot show the Wisconsin Supreme Court's decision was contrary to clearly established Supreme Court law.

Even if, however, the Supreme Court had spoken on this issue and required a defendant to be informed of how a read-in charge could affect his sentence, or even if federal review was *de novo*, Sulla would not be entitled to relief. As the Wisconsin Supreme Court found, the record clearly indicates that Sulla was properly informed and understood that the sentencing court could consider the read-in charges when it determined his sentence. Sulla signed a Plea Questionnaire/Waiver of Rights form that states as follows regarding read-in charges:

> I understand that if any charges are read-in as part of a plea agreement they have the following effects:
>
> - Sentencing – although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.
> - Restitution – I may be required to pay restitution on any read-in charges.
> - Future prosecution – the State may not prosecute me for any read-in charges.

(Plea Questionnaire/Waiver of Rights form, Answer, Docket # 10-2 at 107.) At the plea hearing, the court questioned Sulla about the plea questionnaire form, asking Sulla if he signed the form and if he read and understood the form prior to signing it, to which Sulla responded affirmatively. (Transcript of Apr. 10, 2012 Plea Hearing, Answer, Docket # 10-4 at 67–68.) The court then asked Sulla as follows: "And then you expect that both sides will ask me to dismiss Counts 2 and 4, conspiracy to commit arson and operating motor vehicle without owner's consent, again both as habitual criminal, but have me consider those offenses when I sentence you, also true?" (*Id.* at 66.) Sulla responded "Yes, ma'am." (*Id.*)

The court later, in finding Sulla's pleas knowing, voluntary, and intelligent, stated that counts two and four were dismissed upon the request of the parties, but she would "consider them at sentencing." (*Id.* at 73.)

Then, at the sentencing hearing, the court again explained the effect that the read-in arson charge would have on its sentencing determination as follows:

> I want to say two things. One is, you asked me to dismiss it and consider it as a read-in. So I'm going to. I'm not going to consider that you are uninvolved with it. You gave me a victim – You gave me a plea questionnaire that says that you understand that if charges are-read in as part of the plea agreement they have the following effect; at sentencing, the judge may consider read in charges when imposing sentence, but the maximum penalty will not be increased and that you might be required to pay restitution for read in charges and that the State can't prosecute you separately for it in the future.

(Transcript of May 15, 2012 Sentencing Hearing, Answer, Docket # 10-4 at 145–46.) Thus, Sulla's assertion that he did not know that the court would consider the arson offense at the sentencing hearing, thus rendering his plea involuntary, is belied by the record. For these reasons, Sulla is not entitled to habeas relief on his claim that his plea was involuntary.

3.      *Ineffective Assistance of Trial Counsel*

Sulla further argues that his trial counsel provided ineffective assistance by failing to properly advise him regarding the consequences of the read-in offense, by failing to object to and request information regarding the judge's alleged bias, and by not relaying e-mails regarding possible plea deals. "Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked." *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989). Thus, a guilty plea generally closes the door to claims of constitutional error. There is an exception, however, for instances where one's plea is rendered

involuntary due to the ineffective assistance of counsel. *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014). A habeas petitioner "cannot just assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim"; rather, he "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013).

In *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985), the Supreme Court stated that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." However, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In this case, Sulla has likely procedurally defaulted his ineffective assistance of counsel claim. As the Wisconsin Supreme Court noted, while Sulla raised the issue in his briefing, the issue was not raised in the State's petition for review and the court did not order that any issues presented outside of the petition for review be granted and briefed. (Docket # 10-3 at 444.) Pursuant to Wisconsin law, issues not raised in the petition for review or in a cross petition for review are not properly before the court. (*Id.*)

However, even considering Sulla's argument on the merits, he is not entitled to habeas relief. Sulla cannot show that he entered into the plea agreement based on advice of counsel that fell below constitutional standards. *See Hurlow*, 726 F.3d at 966. Sulla asserts that his trial counsel told him that agreeing to the read-in offense of arson "was not

11

admitting guilt and that it was just something the Court would 'look at' at sentencing." (Affidavit of Richard J. Sulla ¶ 3, Answer, Docket # 10-2 at 140.) Sulla stated that trial counsel failed to explain to him the effect of the read-in offense and he did not understand that it would be considered negatively at sentencing. (*Id.*) But counsel's explanation to Sulla was indeed a correct statement of the law. Wisconsin law is clear that a defendant is not deemed to have admitted guilt to a read-in charge for purposes of sentencing. *State v. Straszkowski*, 2008 WI 65, ¶ 86, 310 Wis. 2d 259, 301, 750 N.W.2d 835, 855. And the very statutory definition of a "read-in crime" is "any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted." Wis. Stat. § 973.20(1g)(b). Beyond the explanation given to Sulla by his trial counsel, Sulla was also informed during the plea hearing itself and through the Plea Questionnaire form that the read-in charge would be considered at sentencing. Thus, Sulla has not shown deficient performance or prejudice pursuant to *Strickland*.

Although he raises the arguments in his habeas petition, Sulla fails to explain how his trial counsel's alleged ineffective assistance regarding objecting to the judge's alleged bias and not relaying e-mails regarding possible plea deals affected whether he would have pled guilty or insisted on going to trial. For these reasons, Sulla is not entitled to habeas relief on his ineffective assistance of counsel claim.

4.    *Judicial Bias*

Sulla argues that his due process rights were violated because after he entered his no contest plea (but prior to sentencing), the trial judge disclosed that she was familiar with the

12

name of one of the victims from her youth. (Docket # 15 at 24.) The respondent argues Sulla procedurally defaulted this judicial bias claim because the Wisconsin Supreme Court rejected it on adequate and independent state law grounds (Docket # 18 at 17–23) and because he did not fairly present the issue as a constitutional due process claim (*id.* at 23–26).

I will begin with whether Sulla fairly presented the judicial bias claim as a constitutional claim. A claim is procedurally defaulted in a federal habeas case if it "was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). "Fair presentment . . . requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025–26. To fairly present one's claim, he must "present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

"In the absence of a state rule that specifically governs the presentment of a constitutional claim, four factors (derived from a waiver analysis) bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4)

whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.*

In both his brief before the court of appeals and in his response to the State's petition for review, Sulla raised the judicial bias issue as a question of state law under Wisconsin's judicial disqualification statute, Wis. Stat. § 757.19(2)(g). (Sulla's Court of Appeals Br., Answer, Docket # 10-3 at 34–37; Docket # 10-3 at 281–84.) Sulla also relied on a single case, *State v. American TV & Appliance of Madison, Inc.*, 151 Wis. 2d 175, 443 N.W.2d 662 (1989), which analyzed that statute but not constitutional issues involving judicial bias. (*Id.*) Thus, Sulla relied solely on state law with no constitutional analysis in presenting his judicial bias claim. Nor did Sulla frame the claim in terms so particular as to call to mind a specific constitutional right or allege a pattern of facts well within the mainstream of constitutional litigation. "'[M]ost matters relating to judicial disqualification d[o] not rise to a constitutional level.'" *Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)).

In *Suh*, the Seventh Circuit rejected a petitioner's claim for habeas relief based on the appearance of judicial bias, finding that the Supreme Court has only identified certain instances requiring recusal, such as where the judge has a financial interest or when the judge has a conflict arising from his participation in an earlier proceeding. *Id.* And while the *Suh* court noted that recusal may also be required outside of those circumstances if "the probability of actual bias is high enough," the court found that the Supreme Court has never held, or even intimated, that the due process clause requires recusal based "*solely* on how the situation might have 'appeared' to an outside observer." *Id.* at 691–92. Rather, the "appearance of bias" refers to situations where "there was at least some risk of actual bias

14

based on facts known to the judge at the time." *Id.* Sulla did not raise this nuanced constitutional claim before the Wisconsin state courts; thus this claim has not been fairly presented and is therefore procedurally defaulted. Because this claim is procedurally defaulted for failure to fairly present the constitutional issue, I need not address the respondent's adequate and independent state law ground argument.

A procedural default can be overcome if a petitioner can show cause and prejudice for the default. *Sanders v. Cotton*, 398 F.3d 572, 580 (7th Cir. 2005). Sulla argues that he "cannot be faulted for counsel [sic] failure to incorporate the addition [sic] argument that Sulla's rights were violated under the federal constitution due process. . . ." (Petitioner's Reply Br. at 6, Docket # 20.) Although ineffective assistance of counsel may constitute cause to set aside a procedural default, *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999), Sulla fails to explain how counsel was ineffective. Although counsel did not frame the issue as constitutional, the issue was raised and argued before both appellate courts. Further, Sulla does not show how he is prejudiced by the alleged error—prejudice meaning an error which so infected the entire proceeding that the resulting conviction violates due process. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). For these reasons, Sulla is not entitled to habeas relief on his judicial bias claim.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate

that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Sulla is not entitled to habeas relief. Thus, I will deny Sulla a certificate of appealability. Of course, Sulla retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of March, 2019.

BY THE COURT:

_s/Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge